IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ROBERT FLEMING

    **Petitioner,**

v.                                                Civil Action No. 5:11cv22
                                                      Criminal Action No. 5:09cr21
                                                       (Judge Stamp)

**UNITED STATES OF AMERICA,**

    **Respondent.**

## OPINION/REPORT AND RECOMMENDATION

### I. Procedural History

On February 11, 2011, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody.[DE 355].[1] In his petition, the petitioner raises the following grounds for relief:[2]

(1) Ineffective assistance of counsel for

    (a) lying to him in order for him to take the plea,

    (b) failing to get him evaluated,

    (c) failed to put in his ten day notice of appeal,

---

[1] All references to the DE are to the docket of the criminal case bearing No.: 5:09cr21.

[2] Four of these grounds (whether his attorney lied to him in order for him to take the plea, failed to get him evaluated, did not get his signature on the plea, and failed to inform him what the grand jury was) are allegations that could have been raised on direct appeal. Therefore they are contingent on whether or not the attorney was asked by Defendant to file an appeal. Accordingly, the only issue discussed at length in this opinion is whether petitioner asked his attorney to and instructed his attorney to file an appeal.

(d) not getting the signature on the plea,

(e) not informing him what the grand jury was.

The transcripts of the petitioner's Plea Hearing and Sentencing Hearing were filed in the record on March 8, 2011. [DE 372 & 373].

The petitioner claims that he asked his attorney to file an appeal immediately following his sentencing . It is not disputed that his attorney did not file an appeal.

An evidentiary hearing was scheduled on July 14, 2011 by the Court's Order dated June 8, 2011. [DE 386]. The federal public defender was appointed to represent petitioner at the scheduled hearing by Order dated June 17, 2011. [DE 388]. Petitioner filed a "Unopposed Motion to Continue Evidentiary Hearing" on July 12, 2011. [DE 391]. This motion was denied on July 13, 2011. [DE 392]. On July 14, 2011, the evidentiary hearing was held. Petitioner appeared in person and by counsel, Katie Cimino. The United States appeared by Assistant United States Attorney John Parr. The Court heard the duly sworn testimony of Petitioner's former defense counsel, Thomas Dyer, and Petitioner. Additionally, the Court received two exhibits (Petitioner's Exhibits 1 and 2) without objection.

## II. Undisputed Findings of Fact

Following the evidentiary hearing and a review of the record, the Court makes the following undisputed findings of fact:

a. Robert Fleming, entered a plea of guilty to Count 27 of an indictment charging him with aiding and abetting the distribution of crack cocaine within 1,000 feet of a protected location on November 10, 2009.

b. The guilty plea was based on a written plea bargain agreement dated November 2, 2009.

c. Key provisions of the plea bargain agreement were reviewed in the presence of Fleming and Fleming told the Court he understood them during the plea hearing including but not limited to the following:

1) "the maximum penalties he faces as a result of that plea, that being imprisonment for a period of not less than one nor more than 40 years ...." [DE 372, p. 7, 16].

2) Paragraph 8 of his plea bargain agreement advised Fleming there had been "no representations or promises made by any agents or employees as to what a specific sentence is going to be..." [DE 372, p. 8].

3) Fleming and the United States stipulated and agreed Fleming's relevant conduct was between 50 and 150 grams of cocaine base and that a one level enhancement was appropriate under 2D1.2(a)(2) since the offense of conviction occurred within 1,000 feet of a protected location. [DE 372, p. 9].

4) Under paragraph 12, Fleming was made aware of his appellate rights, and waived "his right to appeal directly or indirectly in a habeas corpus proceeding, any and all sentences up to the statutory maximum in this case." [DE 372, p. 10, 13, 17].

d. Fleming advised the Court that it was his signature on the first and all subsequent pages of the plea agreement. [DE 372, p. 11].[3] He also advised the Court there were no other deals or side

---

[3] Fleming claimed in his petition that he did not sign the plea agreement. In the light of irrefutable evidence to the contrary, Fleming, by counsel, advised the Magistrate Judge that the claim in the petition was erroneously made by a jailhouse lawyer type friend who helped him with the petition. It is irrelevant to the decision made herein. The Magistrate Judge does not rely on the uncorroborated testimony of or allegations made by Fleming as he has no credibility. His testimony is not credible except for that which can be independently corroborated by other evidence of record

agreements with the government that were not contained in the plea bargain agreement. [DE 372, p. 12].

 e. Fleming advised the Court that no one had "predicted what the exact sentence" would be; that no one would know what the exact sentence would be until the pre-sentence report was received and analyzed under the sentencing guidelines and other sentencing factors; and that, in fact, he did the crime to which he had just pled guilty. [DE 372, p. 25, 26].

 f. Fleming was sentenced on February 8, 2010 to serve 121 months of incarceration.

 g. Fleming and his attorney had received and reviewed the pre-sentence report and from that report Fleming and his counsel knew that his guideline sentence range was approximately 121 months to 151 months. [DE 373, 3, 4 and FTR].[4]

 h. The Court announced tentative findings which included the sentence range of 121-151 months and his intent not to depart from the guideline sentence except for fine. [DE 373, 5].

 i. Fleming made the following statement after the Court announced his tentative findings: "I will make the statement, I am not a good speaker, especially under pressure, but, uh, when I did this crime, you know, I had fired my lawyer. I had got a new lawyer, you know, and he told me that I could do this - - I could do this to take this plea. He told me I could get two or three years. He told me I would have to cooperate. I have not provided no information yet so and now I'm being sentenced today and he is telling me that I got to come back for a 5K, which I don't understand what the 5K is and wasn't expecting it; but also my crime, I want to say I did prison time in the State of

---

in the hearing.

 [4] All references to "FTR" are to the federal trial record digital recording of the hearing of May 14, 2011 which is available to the Magistrate Judge and Court personnel.

West Virginia. I got out. I came and when I got out I was focused, I was focused on sports. I thought for real I was going to go to arena football league or box. I focused myself on training, I really never got no focus on education or other stuff continuing on. So when I got out, I had problems with my baby's momma, was driving my crazy. I came back to Wheeling and started getting around the same people again and starting selling drugs again. And I'm sorry, I regret that. I am hoping you could sentence me today, I hope you could have sympathy on me and I hope that when I get out I would be a better person, I would be focused on some education and a better way to make my money. That's all." [DE 373 5-6].

    j. Fleming's counsel, Mr. Dyer, immediately thereafter made the following statement: "Your Honor, I think it is evidenced by Mr. Fleming's cooperation thus far with the agents, he certainly is deserving of consideration to a sentence at the low end of his Guidelines. I fully anticipate that there will be additional cooperation and assistance forthcoming on his part. And I am certainly sorry that there is some disconnect or lack of understanding on his part as he has communicated to the Court this morning about the 5K, which will become a Rule 35 after today, we presume. But I will have a further discussion with him about that as soon as this hearing concludes." [DE 373, p. 7].

    k. Assistant United States Attorney John Parr immediately thereafter stated in pertinent part: "I would also note that Mr. Fleming has cooperated with the authorities, he has gone through a debrief, ..., has identified other individuals. It is my intention as we seek indictments for those individuals, not only on behalf of Mr. Fleming, but on the other defendants in this case, that I will be coming back whenever I am able to look this Court in the eye and say these people helped me with the substantial prosecution of others and identify who those are. Within the year that we are allowed, then I will probably be coming back, assuming continued cooperation not only from Mr.

Fleming but the others because he has done that, but because he has gone that far, he has done all of these things, we would recommend a sentence at the low end of the range." [DE 373, p. 8].

l. Fleming was advised by the Court that notwithstanding his waiver, to the extent he "may have any right of appeal, that – a notice of appeal must be filed with the clerk not more than ten days from the date of entry of the judgment order." [DE 373, p. 13].

m. The judgment was entered February 9, 2010. [DE 305].

n. Mr. Dyer observed Fleming appeared to be angry, upset and agitated at and after the sentencing hearing upon learning that he was sentenced to 121 months of incarceration. [FTR].

o. Mr. Dyer and Fleming spent about a minute together in the Courtroom immediately following sentencing and prior to Fleming being removed by the deputy Marshals during which time Dyer tried to calm Fleming by talking about his need to cooperate with the government so a motion would be filed to reduce his sentence. [FTR].

p. Mr. Dyer told Fleming he would come to talk to him in the Marshal's lockup. [FTR].

q. Mr. Dyer spoke with a young woman, possibly Fleming's girlfriend following the sentencing hearing and in response to her insistence on appeal told her there were no grounds for an appeal and he would not file a frivolous appeal, but that Fleming may be able to file a habeas motion.

r. Mr. Dyer did not come to the Marshal's lockup to talk to Fleming and offered no explanation for why he did not. [FTR].

s. Mr. Dyer did not have telephone contact with Fleming after the sentencing hearing. [FTR].

t. Between February 8, 2010 and February 22, 2010 Fleming wrote Mr. Dyer a letter in which he stated in pertinent part: "Mr. Dyer if your [sic] not 100 percent sure that I will get a five K 35 Rule sentence redution [sic] then I want you to appeal my plea." [Pet. Ex. 1, Hrg. 7/14/11].

6

u. Mr. Dyer did not retain the original or make a copy of the envelop that accompanied Fleming's letter. [FTR].

v. Mr. Dyer was not 100% sure Fleming would get a sentence reduction. [FTR].

w. Mr. Dyer did not take Flemings letter as a request that he file an appeal. [FTR].

x. Mr. Dyer responded to Fleming's letter in writing on February 22, 2011. Mr. Dyer did not mention anything concerning appeal. The pertinent portion of Mr. Dyer's written response was: "I've received your recent letter and I appreciate your apology. I'm sorry that I didn't have the opportunity to visit with you sooner than immediately prior to the sentencing hearing. However, I want you to be reassured that you will receive a sentence reduction if you continue to cooperate with the government. As I explained to you, the size of that reduction will depend primarily upon the significance of the testimony and other information that you provide to the United States Attorney or the federal agents." [Pet. Ex. 2, Hrg. 7/14/11].

y. No notice of appeal was filed within 10 days of February 9, 2010. [Docket 5:09cr21, FTR].

z. Fleming did not receive a Rule 35 sentence reduction within one year of February 9, 2010.

### III. Analysis

The sole issue to be addressed by this Court is whether the petitioner requested- instructed his attorney to file an appeal.

As a preliminary matter, it should be acknowledged that the petitioner waived his right to an appeal in his plea agreement. As to whether or not this waiver is valid, the Fourth Circuit has found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994). The Fourth Circuit then found that whether

a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." *Id.*

After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. *Id.* at 732. For instance, the Court noted that a defendant "could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." *Id.* Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." *Id.*

In a subsequent case, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. United States v. Lemaster, 403 F.3d 216, 220. Therefore, like waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. *Id.*

Despite the fact that a defendant can waive his right to an appeal, the Fourth Circuit Court of Appeals has held that "a criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993). In rendering this decision, the Court opined:

> Persons convicted in federal district courts have a right to a direct appeal. Coppedge v. United States, 369 U.S. 438, 82 S.Ct.917, 8 L.E.2d 21 (1962). In addition, the Sixth Amendment right to counsel extends to the direct appeal, Douglas v.

8

California, 372 U.S. 353, 83 S.Ct. 917, 8 L.Ed.2d 811 (1963), and it obligates the attorney to file the appeal and identify possible issues for the court even if, in the attorney's opinion, those issues are not meritorious. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

*Id.* at 41.

Further, in Roe v. Flores-Ortega, 528 U.S. 470 (2000), the Supreme Court recognized that "[i]f counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Flores- Ortega, 528 U.S. at 478.

The burden to prove ineffective assistance of counsel is on the petitioner, and the petitioner must prove that his legal assistance was ineffective under the two part analysis outlined in Strickland v. Washington, 466 U.S. 668, 687 (1984). First, the petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Id.* at 688. In reviewing claims of ineffective assistance of counsel, "judicial scrutiny of counsel's performance must be highly deferential," and the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 689-90.

Second, the petitioner must be prejudiced by counsel's performance. In order to demonstrate prejudice, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. If the defendant shows no prejudice from the alleged ineffectiveness of counsel, courts need not address counsel's performance. Fields v. Att'y Gen. of Maryland, 956 F.2d 1290, 1297 (4th Cir.), cert.

9

denied, 506 U.S. 885 (1992).

Based on these cases and the undisputed facts of this case, the petitioner has satisfied the two-part test in Strickland and proven that he requested his attorney to file an appeal. Petitioner testified he asked Mr. Dyer to file an appeal during the brief conversation in the Courtroom immediately following his sentencing. [FTR]. However, Mr. Dyer testified he has no recollection and cannot say one way or the other that a request for appeal was made at that time. [FTR]. Mr. Dyer further testified that had the petitioner told him to appeal, he felt he would have probably remembered being told that, but has no recollection of the petitioner asking to appeal. {FTR}. Mr. Dyer's usual practice would have been to candidly discuss the request for appeal, the issue of no existing non-frivolous grounds for appeal, and if the client insisted on the appeal, he would file an "Anders" appeal brief. [FTR]. However, Mr. Dyer has no recollection of such a conversation with petitioner. [FTR]. Due to Mr. Dyer's general lack of recollection, the Court concludes that his conduct was below the general standard of reasonableness and that the petitioner was prejudiced by Mr. Dyer's failure to file an appeal.

Although the petitioner's testimony by itself lacks credibility, it is corroborated by the evidence of record that shows he was upset during the sentencing hearing; by Mr. Dyer's lack of recollection about what transpired immediately after sentencing; Mr. Dyer's recollection of talking to a young woman in the Court following sentencing about not filing a frivolous appeal.

Moreover, Fleming's letter to Dyer was written some time between sentencing on February 8, 2010 and the date Mr. Dyer responded to it - February 22, 2010. While Fleming's letter started out with an apology to Mr. Dyer for speaking in Court and talked much about his shock over the length of sentence and his willingness to work with the government to earn a sentence reduction, the

letter unequivocally stated: "Mr. Dyer if your [sic] not 100 percent sure that I will get a five K 35 Rule sentence redution [sic] **then I want you to appeal my plea**." [emphasis added]. Mr. Dyer's testimony at the July 14, 2011 habeas hearing is equally unequivocal. In February 2010 when he received the petitioner's letter, he was not 100% sure his client would receive a sentence reduction. Although this letter is not a direct request for an appeal, case law indicates that "counsel has a constitutionally-imposed duty to consult with defendant about appeal when there is reason to think . . . that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480. From the content of the letter sent from the petitioner to Mr. Dyer, Mr. Dyer clearly had a reason to think that the petitioner was interested in appealing and had a constitutional duty to consult with him about this matter. No such consult was conducted by Dyer. In his written response dated February 22, 2010, Dyer did not even mention the issue of appeal.

Fleming's ten (10) day window to file an appeal would have expired not later than February 19, 2010. Dyer's testimony that it was his habit to dictate a response to such correspondence when he opened it does not prove he received it after the expiration of the ten (10) day window. He also testified he could have been out of the office for some reason when the letter arrived and opened it days later on his return, making it entirely possible for the letter to have been received within the ten (10) day window. Furthermore, February 19, 2010 is a Friday. It is also possible that the letter was received on Friday, February 19, 2010 and not opened by Mr. Dyer until the following Monday, February 22, 2010. Under that state of fact the letter from Fleming would have been mailed before the ten day window expired and in Dyer's office available for opening before the ten day window expired. Based on the fact that Mr. Dyer does not know when he received or when he read the letter

11

and the petitioner has testified that he sent it within the ten day window, the Court concludes that the letter was a timely request for an appeal.

Based upon the totality of the evidence and by a preponderance of that evidence, the Court finds that Mr. Fleming requested that Mr. Dyer appeal his sentence not only immediately following the sentencing hearing but in a written letter sent to Mr. Dyer some time between February 8, 2010 and February 22, 2010. This conclusion is supported by Mr. Dyer's testimony that he did speak with a young woman following the sentencing hearing who requested an appeal, that Mr. Dyer observed Mr. Fleming to be very agitated and upset at the conclusion of the sentencing hearing, and his general lack of recollection about the incident.

Therefore, it is recommended that the petitioners 28 U.S.C. § 2255 be granted.

### III.   Recommendation

For the reasons stated herein, the undersigned recommends that the petitioner's 28 U.S.C. § 2255 motion [DE 355] be **GRANTED** and that he be re-sentenced so he may properly file an appeal.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: July 20, 2011.

s/ *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE